2011 UT App 134

**In the interest of A.C., L.C., and R.C., persons under eighteen years of age.**

**R.K.C., Petitioner,**

v.

**Department of Human Services, Palmer DePaulis, Director; Department of Child and Family Services, Brent Platt, Director; Attorney General; Dianne Balmain, Assistant Attorney General; Office of Guardian Ad Litem, Roger Baron, Guardian Ad Litem; and C.C., Respondents.**

**No. 20110114–CA.**

Court of Appeals of Utah.

April 28, 2011.

R.K.C., Logan, Petitioner Pro Se.

Mark L. Shurtleff and Carol L.C. Verdoia, Salt Lake City, for Respondents.

Before Judges McHUGH, THORNE, and CHRISTIANSEN.

## MEMORANDUM DECISION

McHUGH, Associate Presiding Judge:

¶ 1 Petitioner R.K.C. (Father) filed an original petition for extraordinary relief in this court, purportedly on behalf of his minor biological children, A.C., L.C., and R.C. (the Children), whom he claims are being wrongfully detained by the Division of Child and Family Services. The petition sought an order requiring production of the Children before this court and a demonstration by Respondents as to why the continued detention of the Children is not wrongful. We construed the petition as seeking habeas corpus relief and transferred it to the district court pursuant to rule 20(a) of the Utah Rules of Appellate Procedure. *See* Utah R.App. P. 20(a) ("If a petition for a writ of habeas corpus is filed in the appellate court or submitted to a justice or judge thereof, it will be referred to the appropriate district court unless it is shown on the face of the petition to the satisfaction of the appellate court that the district court is unavailable or other exigent circumstances exist."). This case is before the court on a motion to vacate our order of transfer. The motion was filed on behalf of the Utah Department of Human Services, Palmer DePaulis, Director; Division of Child and Family Services, Brent Platt, Director; and the Utah Attorney General's Office (the State Respondents). Father filed a response in support of the State Respondents' motion to vacate the transfer. We deny the motion to vacate our prior order.

¶ 2 While Father's pro se petition is not a model of clarity, the relief sought on behalf of the Children, whom he claims are being unlawfully detained by the State Respondents, constitutes classic habeas corpus relief: the giving up of the custody of the Children. Furthermore, throughout Father's post-transfer filings, he consistently refers to his petition as initiating "habeas corpus proceedings," which he claims are based on violations of due process and should therefore supersede any ongoing juvenile court child welfare proceedings involving the Children. Acknowledging the difficulty often experienced in interpreting pro se submissions and that the movants have construed it otherwise, we nevertheless continue to view Father's petition as a habeas corpus petition. *See Renn v. Utah State Bd. of Pardons,* 904 P.2d 677, 681 (Utah 1995) ("We will look to the substance of the action and the nature of the relief sought in determining the true nature of the extraordinary relief requested. In short, the name a party or a court applies to an action for an extraordinary writ is not

binding if the true nature of the petition is other than the name applied to it."); *cf. United States v. Kirkpatrick*, No. 1:96–CR–81, 2009 WL 2823658, at *7, 2009 U.S. Dist. LEXIS 77248, at *18 (E.D.Tenn. Aug. 28, 2009) ("The courts may recharacterize a prisoner's pro se motion for post-conviction relief to fit inartfully pleaded claims into the proper avenues for relief.").

¶ 3 Our order transferring the petition to the district court was based expressly on rule 20(a) of the Utah Rules of Appellate Procedure, which directs that such petitions will be transferred to the district court. *See* Utah R.App. P. 20(a). If the district court denies or dismisses a petition transferred to it by this court, "a refiling of the petition with the appellate court is inappropriate; the proper procedure ... is an appeal from the order of the district court." *Id.* The memorandum in support of the motion to vacate our order does not address the mandatory language of that rule. Instead, the State Respondents argue,

> The Petitioner, vis-a-vis his children, seeks a review of the district court proceedings and orders regarding his wife's criminal cases, and also seeks a review of the state custody of his children, which is the subject of ongoing juvenile court proceedings. The State Respondents move this court to vacate its Order of Transfer because it is inappropriate to transfer the petition to the district court when Petitioner is seeking a higher court's review of the purported illegality of certain district court orders and proceedings. Similarly, it is inappropriate to transfer this matter to the *district court* for a review of *juvenile court* orders and proceedings.

The State Respondents further assert that the case "is impossible to resolve at the district court level because it requires the district court to review its own orders and issue habeas relief upon itself, and upon the juvenile court, a co-equal court." Finally,

State Respondents claim, "It is impossible to know how to address this as a State Respondent in light of the problematic procedural posture of this matter, which has bypassed necessary orders of the appellate court." Because the State Respondents' motion indicates some confusion about habeas corpus generally and its atypical use in civil child welfare proceedings, we take this opportunity to clarify our prior order of transfer.

¶ 4 The State Respondents' motion to vacate our transfer of Father's petition to the district court essentially challenges the wisdom of rule 20(a), albeit without discussing the rule, by arguing that the petition should not be transferred to the district court because the district court would then be required to review its own orders. However, this procedure is consistent with other proceedings in the nature of habeas corpus.[1] *See* Utah Code Ann. § 78B–9–104(1) (Supp. 2010) (stating that unless precluded by other statutory provisions, "a person who has been convicted and sentenced for a criminal offense may file an action in the district court of original jurisdiction for post-conviction relief to vacate or modify the conviction or sentence");[2] *see also* Utah R. Civ. P. 65C(c) (stating that proceedings for post-conviction relief filed under the Post–Conviction Remedies Act "shall be commenced by filing a petition with the clerk of the district court in the county in which the judgment of conviction was entered"); *Stewart v. Ellsworth*, 2010 UT App 186U, para. 3, 2010 WL 2721406 (mem.) (per curiam) ("Under the [Post–Conviction Remedies Act] and rule 65C of the Utah Rules of Civil Procedure, a collateral challenge to a conviction or sentence must be asserted in the district where the convictions originated."). Here, Father attempts a post-conviction challenge to the incarceration of Mother, which made her unavailable to parent the Children. By transferring the petition to the district court where the proceedings resulting in Mother's

---

1. Rule 65B of the Utah Rules of Civil Procedure (captioned "Extraordinary relief") applies to "all petitions claiming that a person has been wrongfully restrained of personal liberty," with the exception of those filed under rule 65C (captioned "Post-conviction relief"), *see* Utah R. Civ. P. 65B(b)(1); *see also id.* R. 65C(a) (stating that this rule governs proceedings in all petitions for post-conviction relief filed under the Post–Conviction Remedies Act).

2. Because the relevant statutory language has not changed, we cite the current version of the code as a convenience to the reader.

conviction occurred, the issues raised in the petition can be assessed in light of the record of those proceedings. This is something that is unavailable to an appellate court receiving the challenge to the proceedings outside the context of a direct appeal. After the district court has considered the issues and developed the record, the decision can be reviewed on direct appeal. *See generally Lancaster v. Cook*, 780 P.2d 1246, 1246–47 (Utah 1989) (per curiam) (reviewing the district court record from convicted defendant's pro se petition for a writ of habeas corpus in order to consider the issues raised in the appeal of the district court's denial of that petition).

¶ 5 Next, the State Respondents argue that our transfer was inappropriate because the district court cannot review rulings of the juvenile court in the context of a habeas corpus proceeding. The State is incorrect. Indeed, only the district court has jurisdiction to consider such matters. *See In re Hales*, 538 P.2d 1034, 1035 (Utah 1975) ("The [Utah] Constitution gives the district court jurisdiction to hear habeas corpus matters. The juvenile court is of statutory origin, and its powers are limited to those specifically set out in statute.... We have not been advised of nor have we been able to find any authority in the juvenile court to determine matters of habeas corpus."), *superseded by statute on other grounds as stated in In re Adoption of J.J.*, 781 P.2d 465 (Utah App.1989). Utah Code section 78A–6–104(3), pertaining to the jurisdiction of the district and juvenile courts, states, "This section does not deprive the district court of jurisdiction ... to determine the support, custody, and parent-time of a child upon writ of habeas corpus...." Utah Code Ann. § 78A–6–104(3) (2008).

¶ 6 Some of the confusion in this area may be due to the differences in the subject matter of habeas corpus review and direct appeal, and the statutory modifications that have been made to the Juvenile Court Act with respect to the district court's jurisdiction over habeas corpus petitions arising out of juvenile court proceedings. In 1954, the Utah Supreme Court held that once the juvenile court exercises its original exclusive jurisdiction, "the matters of (1) fitness of persons to have custody and (2) the welfare of

the minors are matters appealable directly to this court and are not reviewable by the district court in habeas corpus proceedings." *Black v. Anderson*, 3 Utah 2d 42, 277 P.2d 975, 976 (1954). In *Velasquez v. Pratt*, 21 Utah 2d 229, 443 P.2d 1020 (1968), our supreme court held, "we have found no basis [in the record] to persuade us that the District Court was in error in refusing to find [upon review of delinquent's habeas corpus petition] that the juvenile court acted without jurisdiction or in excess of its authority or committed any impropriety of procedure which deprived appellant of due process of law." *Id.* at 1022. Thus, the substantive decision of the juvenile court regarding custody and the welfare of minors was required to be raised by a direct appeal to the appellate court from the juvenile court order, while challenges to the due process afforded by the juvenile court could be brought by means of a habeas corpus petition filed in the district court. *See In re D.R.*, 30 Utah 2d 206, 515 P.2d 617, 619 (1973) ("We ... think that in a proper case the District Courts of this state could issue a writ to determine the legality of the detention of a child without acting as an appellate court in reversing or amending the order made by the Juvenile Court."). Because the juvenile court is a statutory court with only limited jurisdiction that does not include habeas corpus matters, *see id.* ("A statutory court has only the powers specifically granted to it by the act and such other powers as are necessarily implied to carry out its specified functions."), such petitions must be filed in the district court, which then reviews the petitioner's claims relating to a deprivation of due process, develops a record, and issues a decision, *see id.* (holding that the district court is the proper forum to hear petitions for habeas corpus but affirming the district court's dismissal of a habeas corpus petition on substantive grounds apparent from the record). Once the district court issues a decision denying habeas corpus relief, the petitioner has a right of direct appeal from that order and the subsequent appellate review focuses on whether the district court erred in determining whether the juvenile court violated the petitioner's due process rights. *See Velasquez*, 443 P.2d at 1022.

¶ 7 With the adoption of the Juvenile Court Act of 1965, the legislature codified the district court's habeas corpus jurisdiction over proceedings originating in the juvenile court but mandated that the district court certify questions of custody to a juvenile court that previously had acquired continuing jurisdiction over the subject child. *See* Utah Code Ann. § 55–10–78 (1965); *see also In re Adoption of J.J.*, 781 P.2d at 467–68 (providing a review of the history of the Juvenile Court Act). In instances where the juvenile court had not acquired continuing jurisdiction over the child, the district court had discretion to certify questions of custody to the juvenile court. *See* Utah Code Ann. § 55–10–78 ("A district court may at any time decline to pass upon a question of custody and may certify that question to the juvenile court for a determination or recommendation."). In *In re Thornton*, 18 Utah 2d 297, 422 P.2d 199 (1967), the Utah Supreme Court held that the discretion of the district court to decline to pass upon a question of custody, where the juvenile court has not yet attained continuing jurisdiction over the child, should be interpreted to mean that the juvenile court "'should make findings and recommendations ... and refer the matter again to the District Court for its final determination,'" in order to preserve the "'duties and obligations vested in the District Courts of the State.'" *See In re Adoption of J.J.*, 781 P.2d at 468 (quoting *In re Thornton*, 422 P.2d at 201).

¶ 8 After the legislature's 1973 amendments to the Juvenile Court Act, *see* Utah Code Ann. § 55–10–78 (Supp.1973), the Utah Supreme Court in *In re Hales*, 538 P.2d 1034 (Utah 1975), *superseded by statute on other grounds as stated in In re Adoption of J.J.*, 781 P.2d 465, had occasion to consider the mandatory certification of custody questions imposed by the statute in instances where the juvenile court had previously acquired continuing jurisdiction of the child. *See In re Hales*, 538 P.2d at 1035. The court concluded that if the statute "compels the district court to transfer jurisdiction in a habeas corpus matter over to the juvenile court for final determination, then the statute would be invalid as an attempt by the legislature to deprive the district courts of the powers granted to them by the Constitution of Utah," which powers had not been vested in the juvenile court by statute. *Id.* Consequently, the court held that the juvenile court could make only a recommendation to the district court in response to the certification of a question of custody. *See id.* at 1036; *see also In re Izatt*, 572 P.2d 390, 393 (Utah 1977) (remanding to the juvenile court so that, instead of determining the issues raised in the habeas corpus petition, it could "make such findings and recommendation as it may desire for the District Court to consider in making its final disposition as to the custody of the child"), *superseded by statute on other grounds as stated in In re Adoption of J.J.*, 781 P.2d 465.

¶ 9 Two years after *In re Hales*, the supreme court decided *In re Summers*, 571 P.2d 1319 (Utah 1977). There, the juvenile court determined that, by placing custody of a child with the Division of Family Services (DFS) after terminating the biological parents' parental rights, it no longer had jurisdiction to consider a petition filed by the grandparents of the child who were seeking custody of the child. *See id.* at 1320. On direct appeal of the dismissal of the grandparents' petition, the Utah Supreme Court held that the juvenile court retained continuing jurisdiction over the child and reversed and remanded for a hearing on the merits. *See id.* at 1322. In doing so, the court explained that the "Juvenile Court is the proper forum to seek modification of such a custody order [over which it has continuing jurisdiction]" but also noted that "one is not precluded from filing a petition for a writ of habeas corpus in the district court to determine the custody of a child." *Id.*

¶ 10 The 1985 amendments to the jurisdictional provisions of the Juvenile Court Act, among other things, expanded the subject matters that could be certified to the juvenile court to include custody and visitation, and renumbered that subsection as Utah Code section 78–3a–17. *See* Utah Code Ann. § 78–3a–17 (Supp.1986). Further amendments in 1988 provided that, upon certification, "the findings and order of the juvenile court judge are the order of the district court." *Id.* § 78–3a–17(5) (Supp.1988). In *In re Adop-*

*tion of J.J.*, 781 P.2d 465 (Utah 1989), this court considered an appeal of the district court's dismissal of an adoption petition on the grounds that the refusal of DFS to consent to the adoption deprived it of jurisdiction. *See id.* at 466. There, we determined that "[t]he issues clearly concern the status of DFS as J.J.'s legal custodian pursuant to the orders of the juvenile court. As such, the questions raised in this adoption proceeding are questions of 'custody' requiring certification to the juvenile court." *Id.* at 472.

¶ 11 Since the supreme court's decision in *In re Adoption of J.J.*, the Juvenile Court Act has again been amended and the concurrent jurisdiction subsection, which is now numbered as Utah Code section 78A–6–104, no longer includes provisions regarding mandatory or discretionary certification of questions to the juvenile court. *See* Utah Code Ann. § 78A–6–104 (2008). Thus, while the juvenile court has jurisdiction over the substantive issues in such matters, a petition for habeas corpus relief can be heard only in the district court, even if issues relating to custody, support, and parent-time are implicated by the constitutional challenge.

■ ¶ 12 In sum, Father's pro se petition was purportedly filed on behalf of the Children in order to challenge their allegedly unlawful detention. Father claims that the Children's detention is unlawful because it occurred as a result of alleged due process violations during Mother's criminal trial. Father reasons that the due process violations in Mother's criminal trial led to Mother's incarceration and to Mother's unavailability to parent the children. Thus, Father asks that State Respondents be ordered to release the children. As noted earlier, we have construed this petition as one seeking a writ of habeas corpus. Father's requests to be permitted to appear as the Children's guardian for purposes of filing the petition on their behalf and to proceed without payment of filing fees were referred to the district court for determination. *See id.* (providing for concurrent jurisdiction of district and ju-

venile courts and stating, "This section does not deprive the district court of jurisdiction to appoint a guardian for a child . . . .").[3]

¶ 13 Although the State Respondents argue that this court is the only appropriate forum for consideration of the petition, they have not addressed the mandatory language of rule 20(a) or the district court's jurisdiction over petitions for habeas corpus involving the custody of minors, *see* Utah Const. art. VIII, § 5 ("The district court shall have original jurisdiction in all matters except as limited by this constitution or by statute, and power to issue all extraordinary writs."); *see also* Utah Code Ann. § 78A–6–104(3). Because the juvenile court does not have jurisdiction over writs of habeas corpus and we deem Father's petition as one seeking such relief, we deny the motion to vacate and reaffirm our order of transfer consistent with rule 20(a) of the Utah Rules of Appellate Procedure.

¶ 14 WE CONCUR: WILLIAM A. THORNE JR., and MICHELE M. CHRISTIANSEN, Judges.

---

3. We also note that this initial determination and the determination of whether, even if Father is appointed as guardian for the Children, the Children have standing to challenge Mother's custo-dy, either of which may be dispositive, are best made by the district court after consideration of the relevant evidence.